# Exhibit A

Alessandra DeBlasio
Attorney At Law
40 Exchange Place, Suite 2010
New York, NY 10005
Tel: (212) 321-7084
Email: ad@adeblasiolaw.com

March 7, 2012

By Facsimile: 212-805-7992
Hon. Paul A. Engelmayer
U.S. District Judge
U.S. District Court for the
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: U.S. v. Lebanese Canadian Bank SAL, et al., 11 Civ. 9186 (PAE)

Dear Judge Engelmayer:

I am counsel for one of the defendant-in-rem used car dealerships, Cedar Exports Auto Sales, Inc. ("Cedar Exports"), in the above-captioned case. I was the first defense counsel to enter an appearance in this matter, I timely filed a claim on behalf of my client, I timely filed an answer with affirmative defenses to the government's complaint, I timely submitted to the government the documents demanded in the Court's Restraining Order, I have met with government counsel and extensively debriefed counsel on the facts of my client's particular situation, and I have supplied the government with every document requested through informal discovery.

In short, I have had extensive contact with government counsel, as recently as Monday March 5, 2012, and have been very active in moving this case along as it pertains to my client. I write now to the Court to state that I received a copy of the government's March 6 letter to the Court requesting a 60-day adjournment of the March 14 initial conference, that government

counsel did not contact me to ascertain whether my client consented to the requested adjournment, and that we do not consent. Our reasons follow.

Cedar Exports is involved in this action primarily because its president and sole member, Khalil Abdelkhalek, exported cars to Benin through Cedar Exports from November 2010 through December 2011 (earning approximately $1,000 profit per car). Mr. Abdelkhalek is a naturalized U.S. citizen, of Lebanese Druze origin. The Druze are a target of the terrorist organization at issue in this action, Hizballah and, more significantly still, in 2008, Hizballah targeted and bombed Mr. Abdelkhalek's native Druze village, Deir Koubel, Lebanon. While Mr. Abdelkhalek was not there at the time, his parents, siblings and other relatives were.

The government does not dispute that Mr. Abdelkhalek is not a knowing Hizballah supporter and will never knowingly be one. Nor is it in dispute that Mr. Abdelkhalek did not know that the money he received from car sales to Benin – during the course of the money's exchange from local currency into dollars, which were then wired to Mr. Abdelkhalek – was allegedly tainted by Hizballah. The only dispute in this action really with regard to Mr. Abdelkhalek is whether under the statutes charged in the Complaint, Mr. Abdelkhalek is liable for failing to have discovered that Hizballah had infiltrated and corrupted the U.S. overseas car sales business to Benin to such an extent that money his company received from the overseas cars sales had been comingled with Hizballah funds for unlawful purposes.

My client objects to an adjournment because since December 15, 2011, Cedar Exports has been completely shut down. All of Mr. Abdelkhalek's business assets were frozen and not only does he have no money whatsoever to buy a single car at auction to re-sell to generate income, but almost all of the assets frozen ($137,327.74), are monies currently significantly overdue to U.S. auto auction creditors, one of whom, Mannheim Automotive Financial Services,

Inc., has now intervened in this action (Doc. 104). The government also seized 25 cars from Cedar Exports, most of which he had not yet paid for, and he owes money on them to creditors. In addition, a long-time car dealership customer of his in the United Arab Emirates (unrelated to this action and undisputedly not involved) has recalled a business loan from Cedar Exports in excess of $100,000. Cedar Exports has suffered undue hardship and will go out of business if the adjournment is granted and this case continues at its current pace.

As counsel for Cedar Exports, not only have I timely defended this action, but I have repeatedly asked the government to release some funds on an interim basis as settlement negotiations are underway, so that my client's business can stay afloat. For many weeks government counsel advised that a release of funds was a possibility, and then counsel advised that it was under consideration. In the meantime, government counsel kept reassuring counsel that a settlement proposal was imminent, originally anticipated the week of February 13. When the settlement was still not forthcoming as of February 24, I forwarded to the government a draft proposed Stipulation and Order to release money for Cedar Exports. I requested verbally that the government release $100,000, but left the dollar amount blank for the government to fill in. (In addition to the $137,327.74 in the frozen bank account, the value of the 25 cars seized is approximately $163,325.00, but their value decreases as the case continues.)

The government ultimately declined to agree to a Stipulation to release any funds for Cedar Exports, stating instead that the settlement proposal was imminent. As of today, Cedar Exports has not received a settlement proposal containing a dollar figure to be forfeited.

Cedar Exports has complied with every fact and document request from the government. Cedar Exports has done everything it can to facilitate settlement negotiations. The government,

however, has not seen its way to allow Cedar Exports to survive as a business pending negotiations. Accordingly, Cedar Exports opposes the request for adjournment.

Cedar Exports understands the big picture, and understands that there are many defendants and defendants in rem involved in this action, and that the government may not have the resources to move the matter along as swiftly as Cedar Exports would like. But, given that situation, the government might recognize Cedar Exports's hardship and agree to steps to alleviate it. It is not our understanding that this action was intended to do away with the U.S. auto export industry and individual dealers, but rather that it is an attempt to help reform the industry, to help guide it so that auto exporters hereinafter will not unwittingly support terrorist organizations that have managed to gain control of financial transactions. Whatever the intentions, as a consequence of this action, apparently too large for the government to handle efficiently, small auto sales dealerships such as Cedar Exports are being irrevocably harmed.

We ask the Court to deny the government's adjournment request, or in the alternative, to hold an expedited hearing to address defendant in rem Cedar Exports's request for release of assets due to substantial hardship – including preventing the functioning of a business and preventing Mr. Abdelkhalek from working – pursuant to 18 U.S.C. § 983(f). To follow this letter is a proposed Stipulation and Order to release assets of Cedar Exports. Also to follow this letter, per this Court's Order of March 1, 2012, are all of Cedar Exports's pleadings (an Answer and a Claim).

                                              Respectfully submitted,

                                              _____
                                              Alessandra DeBlasio
                                              Attorney for Defendant in rem
                                              Cedar Exports Auto Sales Inc.