```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x
UNITED STATES OF AMERICA,           :

            Plaintiff,              :

         - v. -                     :    11 Civ. 9186 (PAE)

LEBANESE CANADIAN BANK SAL, et      :
al.,
                                    :
            Defendants;
                                    :
ALL ASSETS OF LEBANESE CANADIAN
BANK SAL OR ASSETS TRACEABLE        :
THERETO, et al.,
                                    :
            Defendants in rem.
                                    :
- - - - - - - - - - - - - - - - - -x
```

**GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO MOTIONS BY KASSAB AUTO DEALER LLC AND AUTOCARE LLC D/B/A GOLDEN EAGLE MOTORS FOR RELEASE OF RESTRAINED PROPERTY PURSUANT TO 18 U.S.C. § 983(f)**

```
                                PREET BHARARA
                                United States Attorney for the
                                Southern District of New York,
                                Attorney for the United States
                                  of America

Sharon Cohen Levin
Michael D. Lockard
Jason H. Cowley
Alexander J. Wilson
Assistant United States Attorneys

      - Of Counsel -
```

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT.. . . . . . . . . . . . . . . . . . . . . . 1

FACTS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.   Kassab Auto Dealer. . . . . . . . . . . . . . . . . . 3

    B.   Autocare LLC d/b/a Golden Eagle Motors. . . . . . . . 4

PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    I.   RELEVANT LAW. . . . . . . . . . . . . . . . . . . . . 8

    II.  DISCUSSION. . . . . . . . . . . . . . . . . . . . . . 11

        A.   Kassab Auto and Golden Eagle Fail to Show
            That Any Hardship from the Continued Restraint
            of the Restrained Assets Outweighs the Risk
            That the Property Will Be Lost or Transferred
            If Released. . . . . . . . . . . . . . . . . . . 11

        B.   Kassab Auto and Golden Eagle Have Not Shown
            That the Restrained Assets Would Not Be Used
            to Commit Additional Criminal Acts.. . . . . . . 13

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**PRELIMINARY STATEMENT**

The Government respectfully submits this memorandum of law in opposition to motions by Kassab Auto Dealer LLC ("Kassab Auto") and Autocare LLC, d/b/a "Golden Eagle Motors" ("Golden Eagle" and, collectively, "Movants" and their joint memorandum of law, the "Memorandum") for the immediate release of restrained property pursuant to Title 18, United States Code, Section 983(f).

Kassab Auto seeks the release of (1) approximately $85,000 held in its account at T.D. Bank, N.A.; and (2) eight cars valued at approximately $35,000 purchased by Kassab Auto for export, which have not been released by the auto auctions (the "Restrained Kassab Auto Assets"). Golden Eagle seeks the release of (1) $13,394.97 held in its bank accounts; (2) 20 cars with an approximate value of $86,320 purchased for domestic resale; (3) 18 cars purchased for export, which have not been released by auto auctions; and (4) furniture and tools in Golden Eagle's garage valued at approximately $10,000 (the "Restrained Golden Eagle Assets").[1]

With respect to the contents of Kassab Autos' and Golden Eagle's bank accounts and cars they purchased for export to West Africa, the Movants have not met their burden of

---

[1] The Government does not object to modifying the restraining order to permit cars purchased for domestic resale to be resold to U.S. buyers, or to lifting the restraining order with respect to furniture and tools in Golden Eagle's garage.

demonstrating that the factors under Section 983(f) of Title 18 are satisfied in order for this Court to grant the relief they seek. First, the instant motion must be denied because any showing of hardship put forward by the Movants does not outweigh the certainty that the assets in question will be promptly transferred or dissipated. The very purpose of Kassab Auto and Golden Eagle in making the motion is so that they can transfer the funds in their bank accounts and export the cars out of the United States.

Second, the Movants have failed to satisfy the requirements of Section 983(f)(1)(E). In particular, the Movants have not provided sufficient assurances to the Court that the restrained vehicles will not likely be used to commit additional criminal acts if returned. See 18 U.S.C. § 983(f)(8)(D).

## **FACTS**

The facts in support of the forfeiture of the Restrained Assets are set forth in the complaint filed in this matter on December 15, 2011, verified and sworn to by Special Agent Christopher Miller of the United States Drug Enforcement Agency (the "Complaint" or "Compl."), and have previously been summarized in the Government's opposition to Cedar Exports Auto Sales, Inc.'s motion pursuant to Section 983(f). The Complaint arises out of an investigation by the Drug Enforcement Administration ("DEA") and other federal law enforcement agencies

of a scheme to launder narcotics proceeds and Hizballah-controlled funds through the United States financial system and United States used-car market through buying and exporting used cars to West Africa.

**A.  Kassab Auto Dealer**

During the time period covered by the Complaint, approximately 2006 through 2011, Kassab Auto received at least approximately $9,116,281 in wire transfers related to the purchase, sale, shipment, or otherwise related transaction regarding used cars, including millions in wires from financial institutions, companies, and individuals that are alleged to be involved in narcotics money laundering and/or related to Hizballah.  Kassab Auto received $60,780 from the Hassan Ayash Exchange; $30,968 from the Ellissa Exchange; $674,365 from Deeb Atieh (alleged to be a Hizballah member from Kafra, Lebanon), Mohamad Atieh, and their company, M/S Universal Motors; $3,416,028 from Fadi Star and its principals, Fadi Hammoud and Mohamad Hassan Hammoud (alleged to be a Hizballah supporter); and $144,582 from Khodor Fakih (alleged to be a Hizballah member from Kafra, Lebanon), Ali Mohamad Fakih, and their company M/S Fakih for General Trade.  See Compl. ¶¶ 77 & 78.

In an affidavit dated March 26, 2012 (the "Kassab Affidavit"), Ali Kassab, the sole owner of Kassab Auto, alleges that he did not have any knowledge of the money laundering scheme

3

alleged in the Complaint. (Kassab Aff. ¶ 12). Kassab alleges that his customers were all individuals recommended by family, close friends, or existing customers, and that Kassab Auto never knowingly engaged in business with members or supporters of Hizballah and had no knowledge of any infiltration of Hizballah into the used car business in Benin. (Id. ¶¶ 13, 15). Kassab does not, however, contest that Deeb Atieh, Khodor Fakih, or Mohamad Hassan Hammoud are members or supporters of Hizballah as alleged in the Complaint, and does not address whether he knowingly did business with them, their companies, or their associates.

Kassab further alleges that his business has been harmed because (1) the restraining order issued in this case prevents Kassab Auto from conducting business (Kassab Aff. ¶¶ 16, 18); (2) certain used car auctions and their insurers are unwilling to do further business with Kassab Auto (id. ¶ 20(a)); and (3) Kassab Auto has lost business to other United States auto exporters (id. ¶ 20(b)). Kassab also alleges damage to his reputation. (Id. ¶ 20(c)).

**B.  Autocare LLC d/b/a Golden Eagle Motors**

During the time period covered by the Complaint, approximately 2006 through 2011, Golden Eagle received at least approximately $2,206,078 in wire transfers related to the purchase, sale, shipment, or otherwise related transaction

4

regarding used cars, including hundreds of thousands in wires from the Hassan Ayash Exchange and at least one wire from Mohamad Hassan Hammoud.  See Compl. ¶¶ 3, 45-49, 77-78.

In an affidavit dated March 24, 2012 (the "Elhakim Affidavit"), Chahade Elhakim, one of the two principals of Golden Eagle, alleges that he did not have any knowledge of the money laundering scheme alleged in the Complaint.  (Elhakim Aff. ¶ 12). Elhakim further alleges that Golden Eagle's customers were all individuals recommended by family, close friends, or existing customers, and that Golden Eagle never knowingly engaged in business with members or supporters of Hizballah and had no knowledge of any infiltration of Hizballah into the used car business in Benin.  (Id. ¶¶ 13, 15).

Elhakim further alleges that Golden Eagle's business has been harmed because (1) the restraining order issued in this case prevents Golden Eagle from conducting business (Elhakim Aff. ¶¶ 16, 18); (2) Golden Eagle faces potential liability from a secured lender who loaned funds to purchased restrained cars and from customers who transferred money to Golden Eagle to buy cars (id. ¶¶ 21, 22); (3) certain used car auctions and their insurers are unwilling to do further business with Golden Eagle (id. ¶ 27); (4) banks have closed various personal and business accounts of Elhakim's and his partner's, which they believe is a result of actions by the United States Department of the Treasury and this

5

forfeiture and civil money laundering action (id. ¶ 28); and (5) Golden Eagle has lost business to other United States auto exporters (id. ¶ 29). Elhakim also alleges damage to Golden Eagle's reputation. (Id. ¶ 30).

## **PROCEDURAL HISTORY**

On December 15, 2011, the same day the action was filed, the Honorable Richard J. Holwell issued the Restraining Order pursuant to 18 U.S.C. § 983(j)(1) and Rule G(7) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture to preserve the availability of the *in rem* defendant property in this action for civil forfeiture. The Restraining Order generally prohibited anyone with knowledge of the Restraining Order from transferring, selling, assigning, pledging, hypothecating, encumbering, or disposing of in any manner the Defendant Property or taking any action that would have the effect of depreciating, damaging, or in any way diminishing the value of, the Defendant Property. No seizure warrants have been issued. The assets of Kassab Auto and Golden Eagle are included in the assets restrained by the Order.

Pursuant to a so-ordered stipulation, Kassab Auto and Golden Eagle each has until April 24, 2012, to file a claim in this matter and until May 14, 2012, to file an answer. (D.E. 156). The Government and counsel for Kassab Auto and Golden Eagle have discussed a possible resolution of their potential

claims, and during those discussions the Government has indicated that we does not object to modifying the restraining order to permit the domestic resale of cars purchased for that purpose or to the interlocutory sale of restrained vehicles intended for export to West Africa, with the net proceeds of the sale held as a substitute res.

On March 26, 2012, pursuant to a scheduling order entered by the Court, Kassab Auto and Golden Eagle filed their present motion for release of property.

**ARGUMENT**

Kassab Auto and Golden Eagle have not met their burden under Section 983(f) to release the contents of restrained bank accounts or to permit the export of restrained cars to West Africa. The harm for which they purport to seek redress -- their asserted inability to conduct business -- is not the result of the restraint of these accounts and cars, as Kassab Auto and Golden Eagle admit, and removing the restraint from those assets would do nothing more than render them unavailable for forfeiture.

Rather, Kassab Auto's and Golden Eagle's asserted inability to conduct ongoing business is the result of (1) their inability to spend *new* funds they might receive for the future purchase of cars, and (2) the reluctance of used car auctions to sell cars to Kassab Auto and Golden Eagle while this action is

7

pending.  The Government is willing to explore the possibility of
modifying the restraining order to permit Kassab Auto and Golden
Eagle to open new accounts that could be used to receive funds
and buy cars, subject to their compliance with anti-money
laundering and know-your-customer practices, such as those the
Government has proposed in connection with settlement, and
subject to reporting requirements or Court supervision; but that
provides no basis for the release of currently restrained assets.

**I.     RELEVANT LAW**

Congress enacted Section 983(f) as part of the Civil
Asset Forfeiture Reform Act of 2000, Pub. L. No. 106-185, § 2,
114 Stat. 202, 208-09 (2000), in order to provide a mechanism for
the release of seized property during the pendency of a civil
forfeiture proceeding in certain circumstances where the
government's continued possession of the property would pose a
substantial hardship to a claimant.  <u>United States</u> v.
<u>Undetermined Amount of U.S. Currency</u>, 376 F.3d 260, 263-64 (4th
Cir. 2004).  The statute provides, in pertinent part:

> (1)  A claimant . . . is entitled to
> immediate release of seized property if –
>
> (A) the claimant has a possessory
> interest in the property;
>
> (B) the claimant has sufficient ties to
> the community to provide assurance that the
> property will be available at the time of
> trial;
>
> (C) the continued possession by the

> Government pending the final disposition of forfeiture proceedings will cause substantial hardship to the claimant, such as preventing the functioning of a business, preventing an individual from working, or leaving an individual homeless;
>
> (D) the claimant's likely hardship from the continued possession by the Government of the seized property outweighs the risk that the property will be destroyed, damaged, lost, concealed, or transferred if it is returned to the claimant during the pendency of the proceeding; and
>
> (E) none of the conditions set forth in paragraph (8) applies.
>
> (2) A claimant seeking release of property under this subsection must request possession of the property from the appropriate official, and the request must set forth the basis on which the requirements of paragraph (1) are met.
>
> (3) (A) If not later than 15 days after the date of a request under paragraph (2) the property has not been released, the claimant may file a petition in the district court in which the complaint has been filed . . .
>
> (B) The petition described in subparagraph (A) shall set forth –
>
>> (i) the basis on which the requirements of paragraph (1) are met; and
>>
>> (ii) the steps the claimant has taken to secure release of the property from the appropriate official.
>
> . . .
>
> (6) If –
>
> (A) a petition is filed under paragraph

>     (3); and
>
>         (B) the claimant demonstrates that the
>     requirements of paragraph (1) have been met,
>     the district court shall order that the
>     property be returned to the claimant, pending
>     completion of proceedings by the Government
>     to obtain forfeiture of the property.
>
>     . . .
>
>     (8) This subsection shall not apply if the
>     seized property –
>
>         (A) is contraband, currency or other
>     monetary instrument, or electronic funds
>     unless such currency or other monetary
>     instrument or electronic funds constitutes
>     the assets of a legitimate business which has
>     been seized;
>
>         (B) is to be used as evidence of a
>     violation of law;
>
>         (C) by reason of design or other
>     characteristic, is particularly suited for
>     use in illegal activities; or
>
>         (D) is likely to be used to commit
>     additional criminal acts if returned to the
>     claimant.

18 U.S.C. § 983(f).

Thus, Section 983(f) offers a claimant a "detailed and comprehensive mechanism" for obtaining the release of property subject to civil forfeiture, but "strictly limits the situation in which such relief is available." United States v. Contents of Accounts, 629 F.3d 601, 607 (6th Cir. 2011).

In order to obtain the release of property under Section 983(f), a claimant bears the burden of demonstrating that

10

the statutory prerequisites are satisfied.  Id.; Undetermined
Amount of U.S. Currency, 376 F.3d at 264 (citing Section
983(f)(6)); United States v. Huntington National Bank, No. 2:07-
cv-0080, 2007 WL 2713832, at *1 (S.D. Ohio Sept. 14, 2007)
(same).

**II. DISCUSSION**

    **A. Kassab Auto and Golden Eagle Fail to Show That Any Hardship from the Continued Restraint of the Restrained Assets Outweighs the Risk That the Property Will Be Lost or Transferred If Released**

From the relief Kassab Auto and Golden Eagle request, it is clear that the purpose of the motion is to permit Kassab Auto and Golden Eagle to transfer or dissipate the Restrained Assets by transferring funds from Kassab Auto's and Golden Eagle's accounts and by exporting cars out of the country.  Their motion expressly seeks to be able "to use the assets currently under restraint to fund their lawful business needs" (Mem. at 10); in other words, to transfer the funds.

But, while releasing these assets would certainly render them unavailable for forfeiture, as discussed above it would not redress the Movants' asserted inability to conduct business.  In order to conduct business, they need to be able to receive and spend new funds, customers willing to pay them, and willing counterparties at the used car auctions.  As discussed above, the Government is open in principle to the possibility of modifying the restraining order to permit Kassab Auto and Golden

11

Eagle to open new accounts that could be used to receive funds and buy cars, subject to their compliance with anti-money laundering and know-your-customer practices, such as those the Government has proposed in connection with settlement, and subject to reporting requirements or Court supervision. But the willingness of private parties to buy cars from the Movants and the willingness of the used car auctions to sell cars to them does not depend on releasing currently restrained assets.

   Moreover, the fact that the Movants' ability to conduct business depends on factors other than the restraining order, as they acknowledge, not only reduces the likelihood that their requested modification would provide the redress they seek, but also undermines any contention that released assets would be replaced with new assets from the operations of the business. "Section 983(f) places great emphasis on ensuring the preservation of any released property pending final disposition of forfeiture proceedings." <u>Undetermined Amount of U.S. Currency</u>, 376 F.3d at 265. As the District Court for the District of Columbia explained in the context of liquid assets:

> Although the Court may order the release of liquid assets, including currency, monetary instruments and electronic funds, even if those assets would be available for return in precisely the same form, the Court is not authorized to order the release of funds that are guaranteed to dissipate upon their release with no guarantee of an equivalent replacement.

12

United States v. 8 Gilcrease Lane, 587 F. Supp. 2d. 133, 147 (D.D.C. 2008) (citing Undetermined Amount of U.S. Currency, 376 F.3d at 265); see also Kaloti Wholesale, Inc. v. United States, 525 F. Supp. 2d 1067, 1070 (E.D. Wis. 2007) (claimant's admission that it would sell its seized merchandise if it were released pending trial made release under section 983(f) impossible, even assuming a showing of hardship); United States v. $1,231,349.68 in Funds, 227 F. Supp. 2d 125, 129 (D.D.C. 2002) (denying release of seized cash because the likelihood that it would be unavailable for trial "is almost assured," but granting petition for release of family car for transportation purposes to avoid hardship where risk of car being transferred was minimal).

Accordingly, the Movants' request with respect to currently restrained assets should be denied.[2]

**B. Kassab Auto and Golden Eagle Have Not Shown That the Restrained Assets Would Not Be Used to Commit Additional Criminal Acts**

Pursuant to subsection 983(f)(1)(E), the immediate return of property is not warranted if the seized property, among other things, "is likely to be used to commit additional criminal acts if returned to the claimant." 18 U.S.C. § 983(f)(8).

As alleged in the Complaint, Hizballah members and

---

[2] As discussed above, the Government does not oppose a modification of the restraining order permitting Golden Eagle to sell cars in the U.S. that were originally purchased for the purpose of domestic resale or lifting the restraint with respect to tools and furniture in Golden Eagle's garage.

supporters facilitate the smuggling of cash, including proceeds from the sale of used cars exported from the United States and narcotics proceeds, from West Africa to Lebanon; and finance and facilitate the purchase of some of the used cars in the United States.  Compl. ¶ 2.  Kassab Auto has received millions of dollars from alleged Hizballah members and supporters and their affiliates and companies, including $674,365 from Deeb Atieh (alleged to be a Hizballah member from Kafra, Lebanon), Mohamad Atieh, and their company, M/S Universal Motors; $3,416,028 from Fadi Star and its principals, Fadi Hammoud and Mohamad Hassan Hammoud (alleged to be a Hizballah supporter); and $144,582 from Khodor Fakih (alleged to be a Hizballah member from Kafra, Lebanon), Ali Mohamad Fakih, and their company M/S Fakih for General Trade.  See Compl. ¶¶ 77 & 78.  Nothing in the affidavits or memorandum of law submitted by the Movants provides assurances that any cars released for export to West Africa would not be received by or transferred to individuals and companies whose involvement in money laundering and IEEPA violations underlie the allegations in Complaint.

**CONCLUSION**

For the reasons discussed above, the Government respectfully requests that the Court deny the motion of Kassab Auto and Golden Eagle for the release of restrained property pursuant to Title 18, United States Code, Section 983(f).

Dated: New York, New York
       April 9, 2012

                            Respectfully submitted,

                            PREET BHARARA
                            United States Attorney for
                            the Southern District of New York

                    By:        /s/
                            Sharon Cohen Levin
                            Michael D. Lockard
                            Jason H. Cowley
                            Alexander J. Wilson
                            Assistant United States Attorneys
                            (212) 637-1060/2193/2479/2453