C546lebc

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

               Plaintiff,

         v.                           11 CV 9186(PAE)

LEBANESE CANADIAN BANK, SAL,
et al., CEDAR EXPORTS AUTO
SALES,

               Defendants.

------------------------------x

                            New York, N.Y.
                            May 4, 2012
                            11:15 a.m.

Before:

                HON. PAUL A. ENGELMAYER,

                            District Judge

                    APPEARANCES
PREET BHARARA
    United States Attorney for the
    Southern District of New York
ALEXANDER J. WILSON
JASON H. COWLEY
    Assistant United States Attorneys


HAIG V. KALBIAN, ESQ.
    Attorney for Defendant Ellissa and Ayash

WARNER F. YOUNG, ESQ.
    Attorney for Cybamar and GMBH

BRADLEY S. DEFOE, ESQ. (VIA TELEPHONE)
    Attorney for Defendant Auto Rama, Inc.

R. DANIEL BOYCE, ESQ.
    Attorney for Defendant Hanna and Cary Auto Sales

C546lebc

Appearances (Cont'd)


NABIH H. AYAD, ESQ.
     Attorney for Defendant Global Shipping

TIMOTHY P. SHUSTA, ESQ.
     Attorney for Defendant H&D Export & Import

ELIAS MUAWAD, ESQ.
     Attorney for Defendant HH Automotive and United Auto

VINOO P. VARGHESE, ESQ.
ESTHER A. NGUONLY, ESQ.
     Attorneys for Defendant Chedid

ALEX V. HERNANDEZ, ESQ.
     Attorney for MGM Global Trading

CHRISTOPHER J. CLARK, ESQ.
     Attorney for LCB SAL

HAIG V. KALBIAN, ESQ.
     Attorney for Defendants in Rem Ellissa, Hassan, Ayash

ALESSANDARA DeBLASIO, ESQ.
     Attorney for Defendant in Rem Cedar Exports Auto Sales

C546lebc

1            (In open court; case called)

2            THE COURT:  Mr. Defoe, can you hear us?

3            MR. DeFOE:  Yes, I can.

4            THE DEPUTY CLERK:  Plaintiff ready?

5            MR. WILSON:  Yes.  Good morning, your Honor.  Alex

6    Wilson for the United States, and with me is my colleague Jason

7    Cowley and Sharon Levin.

8            THE COURT:  Good morning.

9            THE DEPUTY CLERK:  Defendants.  Ma'am.

10            MS. DeBLASIO:  Good morning, your Honor.  Alessandra

11    DeBlasio on behalf of Cedar Exports Auto Sales, one of the

12    defendants-in-Rem.

13            THE COURT:  Very good.

14            MR. VARGHESE:  Good morning, your Honor.  On behalf of

15    Jean Y. Chedid, Varghese & Associates.  I am Vinoo Varghese

16    and with me is Esther Nguonly.

17            THE COURT:  Good morning.

18            MR. MUAWAD:  Good morning, your Honor.  Elias Muawad,

19    and I am appearing on behalf of HH Auto Motor, Inc., in Rem.  I

20    am also appearing in place of Joseph Arnone from Michigan where

21    I am from and I am temporarily substituting in for today only

22    for United Quality Auto Sales, Inc.  He did talk to your staff

23    about it and received permission.  Hopefully that is okay with

24    the Court.

25            THE COURT:  That is okay.  Thank you.

C546lebc

|  |  |
|---|---|
| 1 | MR. SHUSTA:  Good morning, your Honor.  Tim Shusta |
| 2 | appearing for defendants-in-Rem Mansour Brothers Auto Trading, |
| 3 | H & D Export and Import, Safari Enterprises and Safari Motors, |
| 4 | LLC. |
| 5 | MR. BOYCE:  Good morning, your Honor.  Dan Boyce from |
| 6 | North Carolina.  I represent Cary Auto Sales, Inc., and Bassam |
| 7 | Hanna, the owner. |
| 8 | THE COURT:  Good morning. |
| 9 | MR. HERNANDEZ:  Good morning, your Honor.  Alex |
| 10 | Hernandez from Connecticut.  I represent MGM Global Trading, |
| 11 | LLC. |
| 12 | THE COURT:  Good morning. |
| 13 | MR. RESNIK:  Good morning, your Honor.  Scott Resnik |
| 14 | and Emily Stern on behalf of defendants-in-Rem Kassab Auto |
| 15 | Dealer. |
| 16 | THE COURT:  Good morning. |
| 17 | MR. MAZUREK:  Your Honor, Henry Mazurek on behalf of |
| 18 | Cybamar Swiss, LLC, defendant-in-Rem, and defendant-in-Rem |
| 19 | United Auto Enterprise.  I note, your Honor, that I understand |
| 20 | your Court's order was that a notice of appearance should be |
| 21 | filed by today's date.  I am here and I am asking permission of |
| 22 | the court to be make a limited appearance only because the |
| 23 | clients have not completed their obligation -- fulfilled their |
| 24 | obligation under the retainer agreement.  I explained to them |
| 25 | they have to do so by today, but I have to tell the Court I |

C546lebc

1    don't have an executed retainer at this time.  I would ask the

2    Court's authorization if I can have until May 15th to inform

3    the Court whether they have complied with that obligation or

4    other means of representation.

5            THE COURT:  I will permit that.  Thank you.

6            MR. KALBIAN:  Haig Kalbian from Washington, D.C.  I

7    represent, specially appearing on behalf of the in Rem

8    defendants Ellissa Holding Company and Hassan Ayash Exchange

9    Co.

10           THE COURT:  Good morning.

11           UNIDENTIFIED SPEAKER:  (Inaudible).

12           THE COURT:  I am sorry.  I didn't hear you.  On behalf

13   of whom?

14           UNIDENTIFIED SPEAKER:  (Inaudible).

15           MR. CLARK:  Your Honor, Chris Clark of Dewey &

16   LeBoeuf, and Kevin Walsh for defendant-in-Rem Lebanese Canadian

17   Bank.  We're appearing pursuant to our notice of claim filed

18   April 5th, 2012.

19           THE COURT:  Very good.  Good morning.

20           Are there any other counsel who have not yet --

21           MR. AYAD:  Judge, good morning.  Nabih Ayad appearing

22   on behalf of A & J Auto Sales in-Rem-defendants.

23           THE COURT:  Very good.

24           MR. YOUNG:  Good morning, your Honor, Warner Young and

25   I am here for Cybamar Swiss, GMBH.

C546lebc

1          THE COURT:  Good morning.

2          Is there anyone else?

3          THE DEPUTY CLERK:  The two gentelmen here, Christopher

4    Clark.

5          THE COURT:  That is Mr. Walsh and Mr. Clark.

6          I think we've heard from everyone.  I thank you all

7    for coming.  To the extent that counsel speak today, I will ask

8    you to preface your remarks by identifying yourself for my

9    benefit and also that of the court reporter.

10          The purpose of this initial pretrial conference is

11    primarily to make sure we have a coherent, clear schedule for

12    events going forward.  Just to review the day, I have received

13    from the government a proposed case management plan.  I assume

14    all counsel have received it as well.  The government

15    represents that with two exceptions there have been no

16    objections to that plan.  The principal object involves people

17    who have not appeared or that served rather as of the date of

18    the plan and the objection being understandably that those

19    people don't want to be kept to the schedule that is set within

20    the plan.  I am going to return in a moment to make sure there

21    arn't any other objections with respect to that plan.

22          Second of all, there have been a number of motions to

23    dismiss already filed in this case.  My notes indicate that the

24    pending motions to dismiss are by Hijazi General Trading,

25    Dealer Services Corp., although I think that may have been

C546lebc

1    mooted by a subsequent settlement; Lebanese Canadian Bank

2    Global Shipping Services.  As I indicated when I think we spoke

3    before my intention is to have all motions to dismiss

4    coordinated on a common schedule and therefore with respect to

5    those pending motions, once we have in place at the end of this

6    conference a case management plan, I will read those motions as

7    in effective having been duly filed pursuant to the schedule

8    set.  If those movants are interested in a swapping out a

9    fuller or different motion by the due date, I authorize them to

10   do that.

11          Next, we have five motions that are either directed at

12   the temporary restraining order or are styled as seeking to the

13   release of property.  Those five motions are respectively by A

14   & J Auto Sales.  I note that we have received a reply brief

15   from A & J and they are joined by Car UZD.  They do appear to

16   be new arguments by the defendants in replay and I will hear

17   from the government in a moment, but I am inclined to authorize

18   a surreply as to those arguments.

19          There is also a motion by Eagle Auto Sales and Ace

20   Auto Leasing.  That I think may have been mooted by a

21   subsequent settlement.  There is a pending fully briefed motion

22   by Cedar Exports and I will rule on that today at the

23   conference.  And then finally there is a motion from Kassab

24   Auto Dealer as to which a reply brief is due on May 11th.

25          Finally, I received a motion from the government

C546lebc

1    seeking authorization to serve counsel with respect to certain

2    entities.  I am inclined to grant that motion, but I am glad to

3    hear if there is an objection to that.

4          So that sets the framework in terms of the issues

5    before me.  Let's begin by talking about the case management

6    plan, which is really the most important thing to deal with

7    today.  Let me ask if there are any defense counsel who object

8    to the schedule that has been proposed by the government in the

9    proposed case management plan and scheduling order.

10          MR. AYAD:  Nabih Ayad for A & J Auto.  Your Honor, we

11    joined in Global Shipping motion to dismiss for jurisdictional

12    grounds.  I don't know if you have that before you.  I knew we

13    filed it and I want to make sure you have it.  If you want me

14    to wait until after to discussion that --

15          THE COURT:  You are quite right that there is a motion

16    from A & J Auto.  I thought that was solely directed at the TRO

17    and not in addition to the motion to dismiss.

18          MR. AYAD:  There are two of them.  One for the TRO and

19    one for--

20          THE COURT:  Correct.  The record will so then reflect.

21          MR. AYAD:  Thank you so much.

22          THE COURT:  Now, in coming back to the case manage --

23          MR. MAZUREK:  Yes.  Henry Mazurek on behalf of Cybamar

24    Swiss; GMBH, LLC.; and United Auto Enterprise.  I just

25    recognized there is one issue that is not mentioned in the

C546lebc

1   management plan with respect to responsive pleadings.  For

2   those defendants who have had stipulations to extend the time

3   to answer, there is no date by which the answers need to be

4   pleaded.  The date for our motions to dismiss --

5           THE COURT:  So give me the paragraph number, sir.

6           MR. MAZUREK:  It is not in here I guess is what I am

7   saying.  Paragraph 4.  There is no indication as to when all

8   answers for those defendants who have been served at this time

9   needs to be answered.  I would ask that be amended to include

10  answers and motions to dismiss shall be filed by June 4th.

11          THE COURT:  Let me ask the government, does that sound

12  reasonable?

13          MR. WILSON:  No, objection, your Honor.

14          THE COURT:  Thank you.

15          MR. MAZUREK:  Thank You, Judge.

16          THE COURT:  Again, the question now for defense

17  counsel is any one else with clarifications like that or

18  objections to the proposed case management plan?

19          MR. BOYCE:  Yes, your Honor.  We have filed or we have

20  submitted a claim.  We have filed an answer.  We do not oppose

21  the case management schedule.  I just need clarification.  My

22  understanding is it excludes motions for summary judgment.  For

23  reasons that I can get into later, we're going to request that

24  the Court consider expediting motions for summary judgment.

25          THE COURT:  I don't think that the schedule excludes

C546lebc

1    motions for summary judgement.  I think it provides that

2    motions for summary judgment under my rules would be triggered

3    by the close of fact discovery.  Under my individual rules, two

4    weeks after the close of fact discovery, a party that seeks to

5    move for summary July is instructed t write a premotion letter

6    to me previewing the anticipated motion.  Opposing counsel then

7    has a week to respond in kind in a short letter, and then I

8    will typically have very soon thereafter a premotion conference

9    intending to give me a preview of that summary judgment

10   litigation and enable me to engage with you and perhaps offer

11   some guidance as to what would be productive for the rest.

12           MR. BOYCE:  Can we be heard later then on a request

13   for an expedited motion?

14           THE COURT:  Well, why don't we address that now

15   because it does relate to the case management plan.

16           For what reason would you be seeking an expedited

17   motion for summary judgment?

18           MR. BOYCE:  This is somewhat a unique case.  I have

19   got a client who is one of a small fish here.  The government

20   seized about $12,000 in an account and one car.  So it is not a

21   lot of money at stake.  We have been attempting to negotiate a

22   settlement for several months now.  The basic terms of the

23   settlement agreement are acceptable to us; but because of a

24   number of different factors, we're unable to settle the

25   settlement agreement because it is not global in scope.  We had

C546lebc

1    to undergo a 480 audit by IRS and successfully completed that.

2    We have another letter from the Department of Treasury asking

3    for information identical to the information that was provided

4    in this case.  There are all these tentacles of the government

5    that continue to come around my client, including now

6    immigration issues.

7            So we're seeking a global settlement.  It doesn't look

8    like the U.S. Attorney's office is able to do such a thing so

9    we're basically out of business, not because of the Court's

10   restraining order but because in the industry right now the

11   insurance companies and the auto auction houses won't deal with

12   us because this lawsuit is pending.  If we have any chance of

13   staying in business and staying quite frankly in the United

14   States, we need this expedited so we can get a court ruling on

15   whether or not we can be dismissed from the lawsuit.

16           THE COURT:  My instinct in candor is with all the

17   individual parties here I would prefer to have summary judgment

18   motions like motions to dismiss on a common schedule.

19           I will hear from the government on that.

20           MR. BOYCE:  We will be willing to waive discovery.

21           MS. DeBLASIO:  Your Honor --

22           THE COURT:  Who are you?

23           MS. DeBLASIO:  Alessandra DeBlasio on behalf of Cedar

24   Exports.

25           Depending on the Court's ruling later on on our motion

C546lebc

1    for the release of assets, we too would be interested in an

2    expedited summary judgment motion schedule.

3              THE COURT:  With the understanding that my inclination

4    is to try to coordinate.

5              MS. DeBLASIO:  Thank you.

6              THE COURT:  Do you have something else?

7              MS. DeBLASIO:  Oh, no.  I was just standing while you

8    were speaking.

9              THE COURT:  You may be seated.

10             Let me hear from the government on its view of this

11   application.

12             MR. WILSON:  I think, your Honor, certainly the

13   government feels that it will need discovery in this matter.  I

14   am not entirely sure what type of summary judgment motion is

15   being contemplated on an expedited schedule before fact

16   discovery has been completed.  Certainly we would have no

17   objection.  Although, I think your Honor has set a schedule for

18   motions of release of assets to amending that to allow Harry

19   Auto to make such a motion at this time.  It does not sound

20   like that will entirely address that claimant's concerns.  I am

21   not sure what our options are.  If it makes sense to the Court,

22   we'll be happy to proceed with a targeted expedited discovery

23   as to Cary Auto.  We'll need discovery of some kind before we

24   go do a motion for summary judgment.

25             THE COURT:  Here is my thought:  I understand your

C546lebc

1    application the same way the government does, which is not

2    directed at the temporary restraint but the very fact of a

3    pending litigation.  I understand that is in effect the

4    unresolved claim against you guys doing business harm.

5              MR. BOYCE:  That is correct, your Honor.

6              THE COURT:  It doesn't sound like the parties met and

7    conferred on this issue beforehand.  In this forum it doesn't

8    seem to be a particularly fruitful one for me to dig into the

9    nuances of evidence that will be needed to be adduced to get us

10   to a point where summary judgment could be resolved in your

11   case.  In the future, it is more fruitful if the parties have

12   engaged and thought through the issues beforehand.

13             For the time being, I am inclined to deny that motion

14   without prejudice.  I will get keep you on the same schedule as

15   everyone else.  That said, if you want to want meet and confer

16   with the government and figure out if there is some streamlined

17   way, key to the facts and circumstances of claims against you

18   to expedite summary judgment, I am all ears.  But for the time

19   being, I am keeping everything on a --

20             MR. BOYCE:  I will go ahead and file the motion.  I

21   wanted to make the Court aware of the issue.  I will confer

22   with the government and file a motion for summary judgment.

23             THE COURT:  Can I make a suggestion?

24             MR. BOYCE:  Yes, sir.

25             THE COURT:  Confer with the government first and then

C546lebc

1    determine what needs to be filed.  It may be from the

2    government's perspective very limited discovery is needed to be

3    filed because of facts dealing with your client which means if

4    you two work together it is more likely I will be getting an

5    application that is joint or that allows me to make heads or

6    tails of it and expedite things for you.

7              MR. BOYCE:  We'll continue to do that.

8              THE COURT:  So with the understanding that if parties

9    want to seek expedited summary judgment, they need to preface

10   it first with a meet-and-confer with the government.

11             Are there other comments or objections from the

12   defense to the proposed case management plan the government has

13   set forth?

14             MR. CLARK:  Your Honor, just keeping the qualification

15   that your Honor alluded to earlier that those defendants would

16   have to be served obviously, it doesn't make sense to put

17   motions that may be directed at service or personal

18   jurisdiction before the time is served.

19             THE COURT:  Once we go around the horn on this issue

20   about the case management plan, I am going to turn next to the

21   government's motion about service on counsel, which may be

22   productive in some degree mooting that concern.

23             MR. CLARK:  Your Honor, we would like to be heard on

24   that.

25             THE COURT:  I understand.

C546lebc

1          Anything else as to the case management plan?

2          MR. KALBIAN:  Your Honor, I am in the same position as

3     Mr. Clark's client.  Obviously I am here on a special

4     appearance -- limited appearance on behalf of these in Rem

5     defendants.  I wanted to make the record clear on that.

6          THE COURT:  Anyone else on the case management plan?

7          MR. WILSON:  Your Honor, I should just note because

8     for whatever reason counsel for Global Shipping doesn't seem to

9     have appeared today, I think it is set forth in my letter that

10    they did have an objection to being put onto a discovery

11    schedule before a ruling was had on their motion, alleging

12    there is no personal jurisdiction.

13         THE COURT:  I am going to deny that motion.  There is

14    going to be a common day for motions to dismiss and I think

15    that is an appropriate motion to dismiss, but there is no

16    reason it ought to be heard out of sync with other motions to

17    dismiss by other defendants.

18         So that leaves us -- Yes.

19         MR. AYAD:  Your Honor, on that particular issue we

20    also filed a motion on jurisdictional grounds.  We just want to

21    make sure we're not waiving our right by attesting to this

22    scheduling order that we are waiving any rights to

23    jurisdiction.

24         THE COURT:  Thank you.  Nobody is waiving any rights

25    by virtue of being here today.

C546lebc

1            MR. AYAD:  Thank you.

2            THE COURT:  I think the next thing rationally to turn

3    to is the government's motion, which is very recently filed in

4    terms of permission to effect service through alternative

5    means.

6            Can the government briefly describe for the benefit of

7    everyone here what it is seeking and why?

8            MR. WILSON:  Yes, your Honor.  The government is

9    seeking two separate forms of relief here relating to serving

10   the parties or personal defendants in this matter who have yet

11   to be served.  The first is that the Court authorized us to

12   serve U.S. counsel for LCB, Ellissa and Ayash who entered a

13   limited appearance in this matter as for forfeiture.  We

14   believe the record reflects that they are well suited and

15   situated to give notice to these parties, that there is no bar

16   in international law or Lebanese law on providing service in

17   this manner and therefore it is appropriate for the Court to

18   order that to move this litigation around.

19           The second form of relief is letters rogatory to be

20   issued to Lebanon in order to effect service on the other

21   defendants who have not yet put in any sort of appearance in

22   this mater.  And also to be clear to the Court, in order to

23   perfect service in Lebanon on the three Lebanese defendants

24   who have made a limited appearance here, just in abundance of

25   caution if judgment were ever to be entered in this action to

C546lebc

 1    ensure that things will smoothly proceed enforcing that

 2    judgment in Lebanon.

 3              THE COURT:  Very good.  As to the second part, the

 4    letters rogatory, I don't know who, if anyone, in this room has

 5    standing to object to it.  Let me see if there is anyone who

 6    objects to the letters rogatory component of the request?

 7              MR. CLARK:  Your Honor, I received this motion this

 8    morning.  I printed it out 20 minutes before I came to court.

 9    I would like to read it before I take a position with regard to

10    it as to my clients.  I ask the Court simply to give us a

11    chance to review the motion and take a motion on the issues

12    that are raised both with regard to letters rogatory, which I

13    do believe we have standing to object to.  Certainly with

14    regard to whether or not your Honor is going to order our

15    clients be served.  Again, I haven't looked into it, but first

16    of all in reading the letter, I don't agree with all the

17    factual recitations in the letter.

18              secondly, your Honor in grating that kind of relief

19    you seem to be, and I don't know because I haven't had the

20    chance to look at all the precedents, swallowing the special

21    appearance going forward.  By making a special appearance in in

22    Rem case we sort of automatically give the Court the ability to

23    say, Well, you are perfectly positioned to give actual notice.

24    I don't know what is left of a special appearance in an in Rem

25    case.  I would like to think about that and present those

C546lebc

 1    arguments to the Court before a decision is made.  We can do

 2    that expeditiously, your Honor.  I don't think it is fair to do

 3    it when I haven't had a chance to read the briefing.

 4            THE COURT:  Mr. Wilson, I have to say I am sympathetic

 5    to that.  Although, it would be great to expedite service in

 6    this case.  Having myself just received the brief in the last

 7    24 hours, it seems to me counsel are entitled to object to it.

 8    It is regrettable because had this motion been made earlier and

 9    litigated were it to be granted, all the people subject to it

10    could then have been folded into the existing schedule on the

11    case management plan.  Because the motion is being made so late

12    and I think I owe it to the people affected by it to have the

13    opportunity to oppose it, even if granted you are going to have

14    a group of people who are on a belated schedule, which I

15    regret.

16            MR. WILSON:  Your Honor, we do apologize that it took

17    time to review our options and figure out our best course.  We

18    did not expect your Honor to rule on this today and certainly

19    agree that the parties should have an opportunity to review it

20    and consider it.  We did want to make sure we got the motion

21    filed and to you for this conference so we could set a schedule

22    for any responses.

23            I think, and I don't want to prejudge how long counsel

24    for the claimants will need, it is possible if we move

25    expeditiously and if the issues raised are not ones that your

C546lebc

1    Honor feels are difficult for you to resolve that we could

2    still have service made and be on the same schedule I believe.

3    It would just require essentially a ruling by May 15th.  I

4    don't want to put any pressure on the Court.  If they are

5    further behind than that, I think we can make the schedule work

6    even with people who are slightly delayed.

7         THE COURT:  Are you going to want the right to reply

8    to any briefs that are submitted in opposition?

9         MR. WILSON:  I think we will want the opportunity once

10   we see it; but if at all possible, we'll waive that so we can

11   move along quickly if we feel it doesn't require one.

12        THE COURT:  Mr. Clark, how much time do you want for

13   an opposition brief?

14        MR. CLARK:  I am in a slightly unique situation.  I

15   would normally say I would like 10 days.  I am not at all sure

16   given the situation where I work that it is going to be easy

17   for me to file that motion within 10 days.  We don't have a

18   mailroom right now or the ability to ECF file.  So I would ask

19   your Honor for 14 days.  I will try to do it as quickly as

20   possible.  If the Court can be understanding of a good faith

21   effort to expedite this given some logistical issues, I would

22   appreciate it.  That will be a good faith effort given the

23   logistical issues.

24        MR. KALBIAN:  Your Honor, in terms of putting in

25   opposition papers, I would like at least an additional seven

C546lebc

1    days to what the rules -- I think it is a 10-day period to

2    respond for putting in opposition papers.  Just my own schedule

3    over the next week or so, I just would like to have the Court,

4    if willing, give us an additional seven days on top of the 10

5    days.

6              THE COURT:  I am going to give defense counsel two

7    weeks from today to file opposition papers with respect to both

8    of the pending motions that the government has made and I will

9    give the government three business days on top of that to reply

10   if it wants to.  So any opposition to the pending motion would

11   be due May 18 and then the government's brief will be due May

12   23rd, a Wednesday, if there is to be one in reply.  I will try

13   to respond quickly.

14             MR. CLARK:  Thank you, your Honor.

15             THE COURT:  To be clear I am going to then sign the

16   case management plan, but obviously it has the carve out for

17   entities that have not been served yet.  I would urge the

18   government to take whatever steps you would otherwise take in

19   terms of normal service with respect to these entities because

20   it is far from a foregone conclusion that the order will be

21   approved.

22             MR. WILSON:  We'll do.  We will do everything we can.

23   My colleague reminded me to make the record clear is that one

24   of the reasons this motion was so late in coming was that we

25   were waiting to see if Ellissa and Ayash would agree to waive

C546lebc

1    service, which would have made things less complicated.

2                    THE COURT:  Very good.  I see another counsel has

3    entered the room.  Who is that?

4                    MR. D'ERASMO:  My apologies, your Honor.  My train was

5    slow from Maryland.  Joseph D'Erasmo for Hijazi General Trading

6    Co.

7                    THE COURT:  Good morning.

8                    Did I hear something from counsel who is on the phone?

9                    MR. DeFOE:  No, your Honor.

10                   THE COURT:  So I am going to sign the case management

11   plan that the government had proposed.

12                   MR. AYAD:  Your Honor, was that for all defense

13   counsel or just for the two parties that--

14                   THE COURT:  Any counsel who wishes to the discrete

15   motions the government has made with respect to, number one,

16   service through alternative means, and number two, the issuance

17   of letters rogatory has two weeks to a oppose those motions.

18   This is not license to submit a brief on some other subject.

19   If you are already served in a case, the relevant deadline for

20   briefing are set in the case management plan.

21                   MR. AYAD:  Thank you, Judge.  I have been on a plane

22   all morning and I don't know what the motion is about.

23                   THE COURT:  Understood.  Defense point is well taken

24   that it is fair to give an opportunity for comment.

25                   I would ask that those who oppose the motion here make

C546lebc

1    clear at the outset what your standing is with respect to each

2    of the two applications the government has made.

3         MR. WILSON:  Before we leave service, there is one

4    other point.  The government on April 12th had put in a request

5    to have the period for service extended as to the personal

6    defendants under Rule 4(m) until June 1.  I don't believe that

7    was ever so ordered.  It didn't appear in the docket.  I don't

8    believe we received the ordered copy.  Without pushing the

9    Court for a resolution, I wanted to make sure that didn't slip

10   through the crack.

11        THE COURT:  It slipped through the crack.  I don't

12   remember seeing that.

13        MR. WILSON:  Your Honor, we will resubmit it.

14        THE COURT:  Resubmit it.  Let me ask if there will be

15   at some moment if any defense counsel expects to object to

16   that, oppose that motion?

17        MR. CLARK:  We do not object to that letter.  We don't

18   take a position on that letter.

19        THE COURT:  Is there any counsel in this room who take

20   a position on that letter?  I assume, unlike me, it has not

21   slipped through the cracks as to you.

22        MS. COWLES:  Your Honor, I can tell you at the time

23   this was after LCB had entered the claim but prior to Ellissa

24   and Ayash entered claims, that letter was served on counsel for

25   LCB but we didn't know counsel for Ellissa and Ayash yet so we

C546lebc

1    can provide a copy.

2              THE COURT:  Very good.  I will ask the government to

3    serve that to me if at all possible today.  I will reserve

4    judgment on it for a couple days to give defense counsel an

5    opportunity if anyone does object to do so, but please let me

6    know of facts of an objection by the end of the day Monday so

7    Tuesday I can rule on it.

8              MR. KALBIAN:  What I heard your Honor say is that the

9    government should serve that on you today.  Will the government

10   be serving that on me as well or will it be done

11   electronically?

12             THE COURT:  I think ECF for people who appear.

13             MS. COWLES:  I think we probably would have it sent to

14   your chambers and e-mailed it to all counsel, but we can put

15   that on the docket.

16             THE COURT:  Do all that to have belts and suspenders.

17             So we discussed the schedule for the case and the

18   exception for people who have not been served.  As to the

19   pending motions to dismiss, again as mentioned I will treat the

20   motions that have already been filed as complying with the

21   deadline set in the case management plan for the opening brief.

22   I am authorizing counsel who filed such an opening brief if

23   they want to reply and submit replacement by the date set in

24   the schedule to do so.

25             With respect to the motions directed at TROs, as I

C546lebc

```
1     mentioned I have a decision I want to read with respect to

2     Cedar Exports.  Before I do that is there anything else from

3     any counsel here with respect to pending motions directed to

4     the TRO or seeking release of property?

5              MR. WILSON:  Not as the one seeking release of

6     property.

7              THE COURT:  Anything from any defense counsel on that

8     subject?  There is obviously a separate schedule that I set as

9     to that.

10              I have prepared to rule on the Cedar Exports'

11     decision, but before I do is there anything else from any

12     counsel they want to raise today?

13              MR. WILSON:  Yes, your Honor.  As to the motion by A &

14     J, which I believe was joined by Car UZD, requesting that the

15     accounting required in the restraining order not apply to them

16     under Fifth Amendment grounds, they alluded to this earlier but

17     the government does believe any new issues were raised in the

18     reply and would like to file surreply within one week from

19     today.

20              THE COURT:  That is so ordered.

21              Anything else from the government?

22              MR. WILSON:  Yes, your Honor, one matter.  I just want

23     to clarify one thing that is essentially an omission from the

24     letter that I submitted.  I want to be fair to Cybamar Swiss

25     who reminded I left them off the list of parties with whom
```

C546lebc

1   active settlement discussions were ongoing.  I said no personal

2   defendants had been engaged in settlement discussions.  That is

3   incorrect.  Cybamar Swiss have been engaged in active

4   settlement discussions and I wanted to make sure the record is

5   clear on that.

6          THE COURT:  Thank you for the clarification.

7          Anything further?

8          MR. WILSON:  No, your Honor.

9          THE COURT:  Anything further from defense counsel on

10  any subject before I turn to Cedar Exports?

11         MR. MAZUREK:  A clarification on the government's

12  clarification.  Since there are multiple Cybamar Swiss

13  entities, I image he was referring to my prospective client

14  Cybamar Swiss, GMBH, LLC, because my client is not related to

15  the other entities.

16         THE COURT:  I think I get that.  I appreciate it.

17         MR. AYAD:  Your Honor, I heard you ruled that the

18  government has an opportunity to reply because there were

19  additional statements made in the reply.  I just want to have

20  the opportunity if they do reply with additional, new

21  information, new allegations, Judge, they we would be allowed

22  to have an opportunity to reply on that.

23         THE COURT:  I will reserve on that until you see what

24  the reply says.  It was a new argument that was made in the

25  reply and my judgment, which I see the government shares, is

C546lebc

```
 1   that it was appropriate to authorize the unusual surreply.

 2   Whether there is license for a sur surreply, let's reserve on

 3   that and see if there is something else new opened up by the

 4   government's surreply.

 5           MR. D'ERASMO:  Your Honor, I have a pending motion to

 6   dismiss.  I just want to confirm that the government's time to

 7   respond to that theoretically was April 26th.  I understand

 8   accepting the government's scheduling order, does that mean it

 9   is extended as well by that scheduling order?

10           THE COURT:  Had you been here earlier, I made clear

11   that to the extent motions to dismiss have already been filed,

12   they are being folded into the motion to dismiss schedule that

13   is set out in the case management plan.  I really think it

14   behooves everybody, and certainly the Court, to have a

15   coordinated schedule with respect to motions to dismiss

16   litigation.  There may or may not be need to be a second

17   schedule set for late served defendants as least as to those

18   already in the fold.  I want anyone on the same schedule.

19           Anything else?

20           MR. WILSON:  Your Honor, one more point.  You

21   discussed this earlier but it may be useful to convey that I

22   have spoken to counsel for Dealer Services Corp. and they do

23   agree that their motion, and indeed their claim in this matter,

24   has been mooted by the settlements Eagle Auto and Golden Eagle

25   and so that motion doesn't need to be addressed by the Court
```

C546lebc

1   going forward.  Similarly that Eagle Auto's motion for release

2   of restrained assets, since that case has also settled that is

3   also moot and off the schedule.

4           THE COURT:  So the extent the docket does not so

5   reflect as to any pending motion, I will ask the government to

6   submit a letter seeking making clear what has been mooted and

7   what has not been and why and we'll issue an appropriate order

8   that terminates those motions.

9           MR. WILSON:  We will, your Honor.  Thank you.

10          THE COURT:  Good.

11          Counsel for Hijazi, because you weren't here at the

12  beginning, I just want to clarify that you will have the

13  opportunity if you want to withdraw the current motion to

14  dismiss and submit a revised one by the deadline that is set in

15  the case management plan.  You are at liberty to do that.

16          MR. D'ERASMO:  Thank You, Judge.

17          THE COURT:  Anything further from defense counsel

18  before I read my ruling as to Cedar?

19          I am going to read that and then we're done for the

20  day.  Going once.  Going twice.  Anything further that anyone

21  wants to put on the agenda today?

22          I have here a ruling on one of the pending motions in

23  the case.  It is a fully submitted motion.  It is a petition by

24  Cedar Exports Auto Sales pursuant 18, U.S.C. 983(f) for the

25  immediate release of property seized by the government.

C546lebc

1          By way of background, the initial conference in this

2     matter was originally scheduled for March 14th, 2012, but the

3     government in a letter dated March 6, 2012, asked that the

4     initial conference be adjourned ultimately to this day to

5     permit ongoing settlement negotiations with various entities.

6     Cedar Exports was the only party to object to that request.  In

7     a letter dated March 7, 2012, it asserted that hardship was

8     being brought on the company by delaying the resolution of the

9     government's claim with respect to it.  Accordingly, the Court

10    met with the government and counsel for Cedar Exports on

11    March 8, 2012.  On the following day, March 9th, 2012, the

12    Court set a briefing schedule with respect to Cedar Exports

13    petition for release of its restrained assets pursuant to 18,

14    U.S.C, 983(f).  That petition has been fully briefed.

15         Cedar Exports has identified the two categories of

16    seized properties that it asks to be released as follows:

17    First is $137,327.14 held at First Tennessee Bank.  Second, are

18    21 cars valued collectively at $114,100, which were seized from

19    Cedar Exports in Jacksonville, Florida.  I should add that four

20    additional cars valued collectively at $49,225 were seized from

21    Cedar Exports' lot in Mt. Juliet, Tennessee, and were

22    originally covered by this petition.  However, there has since

23    been a stipulated order of settlement with the government

24    providing for release of those four cars to a Cedar Exports

25    creditor, Manheim Automotive Financial Services, Inc.  As a

C546lebc

result those four cars are no longer implicated by this

petition.  Cedar Exports is asking the Court to direct the

Cedar Exports may (1) transfer the $137,327.74 presently held

in First Tennessee Bank to any person or entity, except those

that are believed to be affiliated with Hizballah; (2) to use

its bank account with First Tennessee Bank to conduct business;

and (3) to sell or dispose of the 21 cars seized from the

Jacksonville lot to any person or entity, again except those

that are believed to be affiliated with Hizballah.

          Congress enacted 18 U.S.C. 983(f) as part of the Civil

Asset Forfeiture Reform Act of 200 to provide a mechanism for

the release of property during the pendency of the civil

forfeiture action.  Section 983(f)(1) provides that a claimant

is entitled to immediate release of seized property if a

claimant can demonstrate four things:  (A) that the claimant

has a possessed interest in the property; (B) that the claimant

has sufficient ties to the community to provide assurance that

the property will be available at the time of the trial; (C)

that the continued possession by the government pending final

disposition of the forfeiture proceedings would cause

substantial hardship to the claimant; (D) that claimant's

likely hardship from the continued possession by the government

of the seized property outweighs the risk that the property

will be destroyed, damaged, lost, consealed, or transferred if

it is returned to the claimant during the pendency of the

C546lebc

proceedings.  A party cannot invoke relief under this provision

if, pursuant to 18, U.S.C., Section 983(f)(8), the seized

property is contraband that does not constitute the assets of a

ligitimate business.

        In the Court's view, the decisive provision as to

Cedar Exports' claims is Section 983(f)(1)(d).  As to first

subsection 983(f)(A) Cedar Exports clearly as a possessory

interest in the property in question.  As to the second

subsection, 983(f)(1)(B), Cedar Exports also has represented

without any specific reputation by the government that its

president and sole member Khalil Abdelkhalek is a naturalized

U.S. citizen, who has close family ties to central Tennessee

and has no interest in leaving the country.  As to the third

subsection, Section C, Cedar Exports has also represented

credibly and apparently without dispute that the continued

freeze of Cedar Exports' assets, including its bank account, is

working substantial hardship on its business.  I specifically

note in this regard the very detail and helpful declaration

that I have received from Mr. Abdelkhalek.

        However, under subsection 983(f)(1)(D) Cedar Exports'

interest must and balanced against the competing interest of

the government.  The issue is whether Cedar Exports' likely

hardship from the continued seizure outweighs the risk that

property will be transferred during the pendency of the

proceedings.

C546lebc

1           Subsection D requires the Court to balance hardship

2      for the claimant against the risk of the government.  On the

3      one hand, Cedar Exports and Mr. Abdelkhalek assert that the

4      company continues to suffer hardship in the form of

5      depreciating assets, unpaid debt, damage to reputation and

6      potential bankruptcy.  On the other hand, the government would

7      contend that the assets in question will are unfrozen, they

8      will be dissipated.  The government notes that Cedar Exports

9      has not set aside any equivalent replacement assets.  It argues

10     Cedar Exports is merely speculating when it asserts that

11     because Cedar Exports business has an interest in remaining

12     successful, equivalent assets would necessarily be available

13     for forfeiture in the future in the event of the verdict for

14     the government.

15           The Court find that, at some point, Cedar Exports has

16     not satisfied its burden as to Section 983(f)(1)(D).  The Court

17     credits for the purpose of this motion Cedar Exports'

18     representations as to the impact of the continued seizure on

19     its business.  However, on the other side of the equation,

20     which is the risk to the government in the event of a verdict

21     in its favor, the Court simply can not credit Cedar Exports'

22     claim that there is no risk for the government presented by the

23     unfreezing of these assets.  I find that that risk is very

24     substantial here, indeed overwhelming, and that it outweighs

25     the likely hardship to Cedar Exports.

C546lebc

1          To begin with, the Court notes that Cedar Exports

2     itself is asking, quite literally, to dissipate the assets that

3     are currently frozen, in other words, to give these assets to

4     third parties.  Cedar Exports' petition specifically asks the

5     Court to permit Cedar Exports to "transfer, assign, pledge, or

6     dispose of in any manner" the money held in its account at

7     First Tennessee Bank.  Notably, Cedar Exports is not

8     representing that in exchange for this transfer, Cedar Exports

9     will receive property that could then itself be frozen so as to

10    protect the government's legitimate interests.  On the

11    contrary, in its letter dated March 7, 2012, Cedar represented

12    to the Court that "almost all of the assets frozen . . . are

13    moneys currently significantly overdue to U.S. auto auction

14    Creditor."  It thus appears clear assets would be transferred

15    to creditors if the Court granted the request.  Under these

16    circumstances it is clear that if the order is granted, the

17    assets in question will be dissipated.

18          Nor has Cedar Exports given any solid assurance, let

19    alone a guarantee, that substitute or equivalent assets would

20    be available in the event of a judgment favoring the

21    government.  Cedar Exports expresses the hope that its business

22    will prosper and yield substitute assets that could be seized,

23    but that is not close to a sufficient guarantee.  Without a

24    more concrete showing that the government's interest would be

25    protected in the event the assets at issue were unfrozen, the

C546lebc

Court simply cannot find under Section 983(f)(1)(D) that Cedar

Exports has done anything to mitigate the risk that in the

event of a judgment favoring the government, there would be no

assets to satisfy that judgment.  Simply put, without a

tangible, reliable basis to conclude that either the disputed

assets or their equivalent will be available to the government

in the event of a verdict, the Section 983(f)(1)(D) balance

tips decidedly in favor of the government and in favor of

maintaining the current freeze.

In so ruling, I am not minimizing the current hardship

to Cedar Exports.  I am also not preventing Cedar Exports from

moving again for the same relief in that the event in

connection with a revised petition it can provide a solid

guarantee that equivalent assets would be available in the

event of judgment for the government.

In seeking relief under 983(f)(1), Cedar Exports has

argued the government is unlikely to succeed on the claims

against it on the merits.  The Court is not reaching that issue

because it is not relevant under Subsection d, which is the

basis for the Court's ruling.  Subsection D balances the

hardship to the claimant against the risk property will be

destroyed, damaged, loss, concealed, or transferred; but it

does not supply a charter for the Court at this stage to

prejudge the outcome of the merits.

Let me add this final thought:  Cedar Exports has

C546lebc

 1    demonstrated in its motion papers quite constructively, that it

 2    is prepared it adopt remedial measures proposed by the

 3    government in exchange for release of its assets.  Other

 4    parties in this case have been able to work out settlements

 5    involving the adoption of such remedial measures coupled the

 6    negotiated forfeiture terms.  I would urge the parties to

 7    continue discussing whether a resolution along these lines is

 8    achievable.

 9         That is my ruling and I will issue an order today that

10    incorporates by reference the reasoning set forth herein.

11         Is there anything further from the government?

12         MR. WILSON:  No, your Honor.

13         THE COURT:  Anything further from any defense counsel?

14         I wish you well.

                              o0o

15

16

17

18

19

20

21

22

23

24

25