UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                                    :
UNITED STATES OF AMERICA,                           :
                                                    :
                        Plaintiff,                  :
                                                    :
            - v. -                                  :
                                                    :
LEBANESE CANADIAN BANK SAL et al.,                  :
                                                    :
                        Defendants,                 :
                                                    :
ALL ASSETS OF LEBANESE CANADIAN                     :
BANK SAL OR ASSETS TRACEABLE                        :
THERETO, et al.,                                    :
                                                    :
                        Defendants *in rem*.        :
                                                    :
------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/25/13

STIPULATION AND ORDER
OF SETTLEMENT REGARDING
LEBANESE CANADIAN BANK
AND SOCIÉTÉ GÉNÉRALE
DE BANQUE AU LIBAN S.A.L.

11 Civ. 9186 (PAE)

WHEREAS, on or about December 15, 2011, a Verified Complaint, 11 Civ. 9186 (RJH) (the "Complaint") was filed in the United States District Court for the Southern District of New York seeking the forfeiture of certain properties pursuant to Title 18, United States Code, Section 981(a)(1)(A) and (a)(1)(C), and seeking civil money laundering penalties pursuant to Title 18, United States Code, Section 1956 against certain parties;

WHEREAS, on or about October 26, 2012, the United States filed a Verified First Amended Complaint (the "Amended Complaint");

WHEREAS, the Defendants *in rem* in this action include all assets of Lebanese Canadian Bank SAL ("LCB") and assets traceable thereto (the "Defendant Property");

WHEREAS, the Amended Complaint alleges that the Defendant Property (a) constitutes or was derived from proceeds traceable to violations of executive orders and regulations issued pursuant to the International Emergency Economic Powers Act of 1977

("IEEPA"), codified at 50 U.S.C. §§ 1701-1705; and (b) constitutes property involved in money laundering transactions in violation of Title 18, United States Code, Sections 1956 and 1957;

WHEREAS, the Amended Complaint also seeks a civil money laundering penalty from LCB in the amount of approximately $230,000,000 pursuant to Title 18, United States Code, Section 1956(b);

WHEREAS, on or about December 15, 2011, the Court issued a post-complaint restraining order pursuant to 18 U.S.C. § 983(j)(1) and Rule G(7) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture, prohibiting the transfer or dissipation of the Defendant Property (the "Restraining Order");

WHEREAS, on or about February 10, 2011, the United States Department of the Treasury, Financial Crimes Enforcement Network ("FinCEN") issued a Notice of Finding, finding that reasonable grounds exist for concluding that LCB was a "financial institution of primary money laundering concern" pursuant to Title 31, United States Code, Section 5318A; and further issued a Notice of Proposed Rule Making giving notice of FinCEN's proposal to issue a rule prohibiting, *inter alia*, all covered financial institutions from establishing, maintaining, administering, or managing a correspondent or payable-through account in the United States for, or on behalf of LCB;

WHEREAS, LCB asserts that, through counsel, it promptly engaged in meetings with the United States Treasury Department and that it committed to taking necessary steps to address the concerns raised in the Notice of Finding and Notice of Proposed Rule Making;

WHEREAS LCB asserts that on March 3, 2011, after having received and reviewed offers from several banks, and pursuant to the provisions of Article 10 of Lebanese Law 192, dated 4 January 1993 (on facilitating bank mergers)   ("Law 192/93") and in

2

accordance with review and approval of the Central Bank of Lebanon, LCB's Board of Directors, for commercial reasons, resolved to sell all of its assets, liabilities, rights and obligations to Société Générale de Banque au Liban S.A.L. ("SGBL");

WHEREAS, pursuant to an agreement dated June 22, 2011 (the "Sale and Purchase Agreement") between LCB and SGBL, SGBL agreed to acquire substantially all of the assets of LCB, in exchange for the payment of a purchase price of $580 million (the "Purchase Price") subject to the final review and approval of the Central Bank of Lebanon;

WHEREAS, on September 7, 2011, the Central Council of the Central Bank of Lebanon issued its decision number 1/27/11 by virtue of which it granted its final approval of the acquisition by SGBL of the assets and liabilities of LCB pursuant to the provisions of Articles (2-3) and (10) of Law 192/93;

WHEREAS, LCB maintains that subsequent to the execution of the Sale and Purchase Agreement, LCB for commercial reasons ceased its banking activities, placed itself under liquidation, and, consequently, requested to strike its banking license off of the bank list, which request was consented to by the Central Bank of Lebanon pursuant to Decision no. 10799 all in accordance with the provisions of Article (10) Law 192/93;

WHEREAS, pursuant to an agreement dated September 8, 2011 (the "Escrow Agreement") between LCB, SGBL, and a Lebanese bank acting as escrow agent (the "Escrow Agent"), $150 million of the Purchase Price (the "Escrow Funds") was to be held in escrow by the Escrow Agent pending the satisfaction of certain conditions pursuant to the Sale and Purchase Agreement;

WHEREAS, pursuant to the terms of the Sale and Purchase Agreement and the Escrow Agreement, the proceedings concerning the release and distribution of the Escrow Funds between SGBL and LCB are currently pending in Lebanon;

WHEREAS, pursuant to Title 18, United States Code, Section 981(k), the Escrow Funds are deemed to have been deposited into the interbank account in the United States of the Escrow Agent;

WHEREAS, the United States has seized, pursuant to Title 18, United States Code, 981(k), $150 million from an interbank account of the Escrow Agent (the "Seized Funds");

WHEREAS, SGBL has filed a sworn claim in this action  (the "Claim") for $90,000,000 of Seized Funds plus interest (the "Claimed Funds"), representing claims in the amounts of $60,000,000 (the "First Claimed Amount"), $30,000,000 (the "Second Claimed Amount"), and interest on the First and Second Claimed Amounts (the "Interest Funds") from the Escrow Funds;

WHEREAS, LCB agrees that SGBL is entitled to receive payment of the First Claimed Amount from the Escrow Funds in accordance with the terms of the Sale and Purchase Agreement and the terms of the Escrow Agreement, but reserves the right to contest the Second Claimed Amount;

WHEREAS, LCB, SGBL, and the United States agree that the First Claimed Amount will be paid by (a) the release by the United States to the Escrow Agent of $48,000,000 from the Seized Funds (the "Released Funds") and (b) LCB causing $12,000,000 to be transferred to the Escrow Agent (the "First Additional Funds");

4

WHEREAS, SGBL agrees to credit the Released Funds and the First Additional Funds in full satisfaction of SGBL's First Claimed Amount and except for LCB's continued irrevocable and unconditional obligations pursuant to the Sale and Purchase Agreement and the Addendum (the "Addendum"), a copy of which shall be filed with the Court under seal, shall not seek a total amount relating to the Escrow Funds or the New Escrow Funds (as defined below) in an amount over or above the Claimed Funds and the Second Additional Funds (as defined below) plus any interest SGBL is entitled to under the Sale and Purchase Agreement;

WHEREAS, LCB asserts that it had no knowledge, or reason to know, of any alleged unlawful activity taking place at or through the auspices of LCB prior to its designation as a "financial institution of primary money laundering concern" by the United States Treasury Department on or about February 10, 2011, including allegations of a scheme to launder proceeds of IEEPA violations and narcotics transactions through the U.S. used car market;

WHEREAS, SGBL asserts it is an innocent purchaser of the assets and liabilities of LCB and that the transaction was subject to the review and approval of the Central Bank of Lebanon;

WHEREAS, SGBL and LCB have agreed to settle this matter upon the terms and conditions set forth below and in accordance with the Addendum attached hereto;

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and between the United States of America, through its attorney, Preet Bharara, United States Attorney for the Southern District of New York, Sharon Cohen Levin, Michael D. Lockard, Jason H. Cowley, and Alexander J. Wilson, Assistant United States Attorneys, of counsel, LCB and its counsel of record, Evan T. Barr, Esq., of Steptoe & Johnson LLP and John M.

Hillebrecht, Esq. of DLA Piper LLP, and SGBL and its counsel of record, Michael J. Sullivan, Esq., of The Ashcroft Law Firm, LLC, as follows:

1.     LCB and its respective officers, directors, shareholders, subsidiaries, and affiliates acknowledge that each has been made aware of allegations, as set forth in the Amended Complaint, of a scheme to launder the proceeds of violations of IEEPA and proceeds of narcotics transactions, including through the purchase of used cars in the United States; their subsequent shipment to West Africa for sale; the commingling of the proceeds of those sales with narcotics proceeds; and transportation of those funds into Lebanon; and allegations that Hizballah members and supporters were involved at various points in the above-described alleged money laundering scheme (the "Alleged Scheme").

2.     LCB, having contested all of the allegations referred to in the Amended Complaint, and having consistently denied allegations of wrongdoing or management complicity or involvement in drugs, terrorist or money laundering activities, has agreed to settle this matter on such basis and solely for purposes of terminating this litigation and facilitating the completion of the Sale and Purchase Agreement.

3.     SGBL is aware of the allegations set forth in the Amended Complaint and described above in paragraph 1 and believes its officers, directors and controlling shareholders are also aware of these allegations.

4.     LCB, as part of the settlement set forth herein, shall forfeit to the United States for disposition according to law all of LCB's right, title, and interest in the Seized Funds.

5.     Within ten business days of the entry of this Stipulation and Order of Settlement ("Stipulation and Order"), the United States shall release the Released Funds to the Escrow Agent, in full satisfaction of SGBL's sworn claim in this action.

6.     Within ten business days of the entry of this Stipulation and Order, SGBL and LCB shall cause the Central Bank of Lebanon to acknowledge and/or to authorize the entry into the Addendum, as applicable, and LCB shall cause (a) the First Additional Funds of $12,000,000 and (b) an additional amount of $49,100,000 (the "Second Additional Funds," together the "New Escrow Funds") to be transferred to the Escrow Agent and deposited in a new or in the existing escrow account. The Released Funds and the New Escrow Funds shall be allocated for any final resolution of any and all outstanding financial obligations between LCB and SGBL pursuant to (i) the Sale and Purchase Agreement, (ii) the Addendum and (iii) the new or amended escrow agreement with the Escrow Agent.

7.     Within ten business days of the entry of this Stipulation and Order, LCB shall cause the Escrow Agent to release to SGBL, $60,000,000 in full satisfaction of SGBL's First Claimed Amount.

8.     SGBL (a) agrees that the amount of the Released Funds and the New Escrow Funds shall be credited towards any amount of funds to be awarded to SGBL in Lebanon in respect of the (i) First Claimed Amount, (ii) the Second Claimed Amount, and (iii) the other claims expressly set out in the Addendum; (b) expressly, specifically, and irrevocably waives its rights pursuant to Section 7 of the Sale and Purchase Agreement to make any additional claims against LCB for any additional funds relating to any purported unrecorded liabilities in an amount over or above the financial limit set out in  the Addendum; (c) except for LCB's Addendum obligations, expressly, specifically, and irrevocably waives its rights pursuant to Section 8 of the Sale and Purchase Agreement to make any additional claims against LCB for any additional funds relating to any purported warranties other than those set out in the Addendum; (d) agrees that its claims against LCB and the New Escrow Funds, except for LCB's

7

Addendum obligations, shall be limited to (i) claims not to exceed the Second Additional Funds and (ii) any claims in relation to LCB's agreement to indemnify SGBL in the manner described in the Addendum; and (e) agrees that except for LCB's obligations under Paragraph 8.d(ii) the Released Funds and the New Escrow Funds are subject to a final resolution of all and any continued irrevocable and unconditional outstanding financial obligations between LCB and SGBL pursuant to (i) the Sale and Purchase Agreement, (ii) the Addendum and (ii) the new or amended escrow agreement with the Escrow Agent.

       9.     The United States shall not bring any claims against the Escrow Agent or any of its agents and employees in connection with the Escrow Agent's receipt of the Released Funds and New Escrow Funds and its lawful transfer of all or a portion of such funds to SGBL or LCB, pursuant to (a) this Stipulation and Order; (b) the Sale and Purchase Agreement; or (c) any other agreement between SGBL and LCB. The United States acknowledges that SGBL and LCB agree to hold the Escrow Agent harmless from and against any liability or claim arising out or in connection with the maintaining and release of the Released Funds and/or the New Escrow Funds to either LCB or SGBL.

      10.    The United States shall not bring any claim against SGBL, its directors, officers, shareholders, agents, employees, or affiliates arising out of the lawful acquisition of LCB's assets and liabilities pursuant to the Sale and Purchase Agreement, for the Alleged Scheme and/or under a theory of successor liability.

      11.    Upon entry of this Stipulation and Order and the completion of the transfers described in paragraphs 5, 6 and 7 above (a) SGBL's claim in this action shall be deemed to be dismissed with prejudice and without leave to file any new or additional claims to the Seized Funds in this action; (b) the claims in the Amended Complaint for forfeiture of the Defendant

8

Property, including the Released Funds and the Purchase Price, shall be dismissed with prejudice, except with respect to $102,000,000 of the Seized Funds (the "Forfeited Funds"); (c) the Restraining Order shall be amended so as to no longer apply to the Defendant Property, including any further restraint of accounts held in the name of LCB located at various banks in Lebanon as specified in the sealed attachments to the Stipulation and Order between LCB and the United States entered on or about March 27, 2013; (d) the civil money laundering penalty claim pursuant to Title 18, United States Code, Section 1956(b) shall be dismissed with prejudice as to LCB; and (e) the Forfeited Funds shall be deemed forfeited to the United States, subject to the resolution of any remaining pending claims relating to them.

12.     This Stipulation and Order is intended to fully and finally resolve all pending claims made by the United States in this action relating to LCB and the Defendant Property. Specifically, it is agreed that LCB's forfeiture of all right, title, and interest in the Seized Funds and its compliance with its obligations as set forth in this Stipulation and Order shall constitute full and complete satisfaction of (a) any *in rem* claim by the United States arising out of the Alleged Scheme set forth in the Amended Complaint as against the Defendant Property, including funds from the Purchase Price paid or distributed to other parties in connection with the liquidation and winding up of LCB; (b) any *in personam* claim by the United States arising out of the Alleged Scheme set forth in the Amended Complaint for civil money laundering penalties or other relief against LCB; and (c) any *in personam* claims by the United States arising out of the Alleged Scheme set forth in the Amended Complaint against any of the LCB Principals (as defined below) based on (i) any conduct by LCB; and (ii) any conduct by an LCB Principal in his capacity as an LCB shareholder, Board Member, Chairman-General Manager, and/or General Manager.

13.     Nothing in this Stipulation and Order is intended to limit any claims by the United States based on facts other than the Alleged Scheme, any *in rem* claims against property other than the Defendant Property arising out of the Alleged Scheme, or any *in personam* claims arising out of the Alleged Scheme against any LCB Principal based on such LCB Principal's conduct, if any, in his individual capacity outside of his duties or responsibilities at LCB.

14.     The United States acknowledges that the Amended Complaint does not assert any claims against the LCB Shareholders, Board Members, the Chairman General Manager, and the General Manager, whose names are listed in Schedule A attached to this Stipulation and Order (the "LCB Principals").

15.     Subject to compliance with Lebanese law generally and in particular with Lebanon's Banking Secrecy Law and Law No. 318 of April 20, 2001, LCB agrees to provide the United States with access to all documents, records, and information in its possession or which LCB has rights to access under the terms of the Sale and Purchase Agreement, including all records and information pertaining to assets, liabilities, accounts, and account holders at LCB and/or transferred to SGBL. SGBL shall take no action of any kind which would prevent, obstruct, impede, delay, or otherwise interfere with the release of this information by LCB.

16.     Subject to compliance with Lebanese law generally and in particular with Lebanon's Banking Secrecy Law and Law No. 318 of April 20, 2001, SGBL agrees to provide the United States with access to all documents, records, and information transferred to or reviewed by and in the possession of SGBL in connection with the Sale and Purchase Agreement, including all records and information in its possession, pertaining to assets, liabilities, accounts, and account holders acquired by SGBL pursuant to the Sale and Purchase Agreement; and all documents, records, and information relating to assets, liabilities, accounts,

and account holders reviewed by and in the possession of SGBL in connection with the Sale and Purchase Agreement but not acquired by SGBL. LCB shall take no action of any kind which would prevent, obstruct, impede, delay, or otherwise interfere with the release of this information by SGBL.

17.    Provided it does not violate any Lebanese law, freeze order from the Special Investigation Commission of the Central Bank of Lebanon ("SIC"), or order or decision by a court of competent jurisdiction in Lebanon, SGBL shall, upon written authorization and instructions from a SGBL client, including a complete release and waiver, release funds held by SGBL on behalf of that client to the United States. Should written authorization not be provided by a client, then and in that event, SGBL shall release client funds to the United States upon due notification and receipt of a binding and final legal order or decision authorizing the release of funds by a court of competent jurisdiction in Lebanon and if applicable, a decision from the SIC lifting any freeze over the client's account and SGBL shall not be required or bound to release client funds to the United States absent such court order or decision. SGBL shall not contest or otherwise seek to prevent the issuance of such an order by a court of competent jurisdiction in Lebanon.

18.    Provided it does not violate any Lebanese law, freeze order from the SIC, or order or decision by a court of competent jurisdiction in Lebanon, LCB shall, upon written authorization and instructions from a LCB client, including a complete release and waiver, release funds held by LCB on behalf of that client to the United States. Should written authorization not be provided by a client, then and in that event, LCB shall release client funds to the United States upon due notification and receipt of a binding and final legal order or decision authorizing the release of funds by a court of competent jurisdiction in Lebanon and if

11

applicable, a decision from the SIC lifting any freeze over the client's account and LCB shall not be required or bound to release client funds to the United States absent such court order or decision. LCB shall not contest or otherwise seek to prevent the issuance of such an order by a court of competent jurisdiction in Lebanon.

19.    LCB and SGBL are hereby barred from asserting any claims against the United States or any of its agents and employees (including, without limitation, the Drug Enforcement Administration ("DEA") and the United States Attorney's Office for the Southern District of New York ("USAO-SDNY") in connection with or arising out of the United States' seizure, restraint, and/or constructive possession of the Defendant Property, including the Seized Funds; including, without limitation, any claim that the United States did not have probable cause to seize, restrain, and/or forfeit the Defendant Property, that LCB or SGBL is a prevailing party, or that LCB or SGBL is entitled to attorneys' fees or any award of interest.

20.    LCB represents that with the exception of the claims set forth in this action by SGBL, it is the sole legal owner of the Defendant Property. SGBL represents that with the exception of the claims set forth in this action by LCB, it is the sole legal owner of the Claimed Funds. LCB agrees to hold harmless the United States and any and all of its agents and employees (including, without limitation, the DEA and the USAO-SDNY) from any and all claims (including, without limitation, third-party claims, with the exception of the claims asserted by SGBL) in connection with or arising out of the United States' seizure, restraint, and/or constructive possession of the Defendant Property, including the Seized Funds. SGBL agrees to hold harmless the United States and any and all of its agents and employees (including, without limitation, the DEA and the USAO-SDNY) from any and all claims (including, without limitation, third-party claims, with the exception of the claims asserted by LCB) in connection

with or arising out of the United States' seizure, restraint, and/or constructive possession of the Claimed Funds.

21.     LCB represents and warrants that this Stipulation and Order has been duly authorized by its General Assemblies of 9 April, 3 June and 18 June 2013 and constitutes valid corporate action pursuant to the laws and regulations of Lebanon.

22.     SGBL represents and warrants that this Stipulation and Order is duly authorized by SGBL's Bylaws and other corporate documents, notably by a meeting of SGBL's board of directors held on 21 June 2011 approving the execution of the Sale and Purchase Agreement, and constitutes valid corporate action pursuant to the laws and regulations of Lebanon.

23.     Each party waives all rights to appeal or to otherwise challenge or contest the validity of this Stipulation and Order.

24.     Each party shall bear its own costs and attorneys' fees.

25.     The Court shall retain jurisdiction over this Stipulation and Order and over any action to interpret or enforce its terms. The signing of this Stipulation and Settlement Order does not constitute consent by LCB or SGBL to personal jurisdiction over LCB or SGBL, other than for the purpose of enforcing this Stipulation and Order.

26.     The signature pages of this Stipulation and Order may be executed in one or more

counterparts, each of which will be deemed an original but all of which together will constitute

one and the same instrument. Signature pages may be by fax or by pdf and such signatures shall

be deemed as valid originals.

AGREED AND CONSENTED TO:

PREET BHARARA
United States Attorney for the
Southern District of New York

By: _____          6/21/2013
    Sharon Cohen Levin/Michael D. Lockard       DATE
    Jason H. Cowley/Alexander Wilson
    Assistant United States Attorneys
    One St. Andrew's Plaza
    New York, New York 10007
    (212) 637-2200

[ADDITIONAL SIGNATURES ON FOLLOWING PAGE]

LEBANESE CANADIAN BANK, S.A.L.

By: _____          20/6/2013
    George Zard Abou Jaoude                   DATE
    Liquidator
    Lebanese Canadian Bank SAL


By: _____          20/06/2013
    Mohamad Ibrahim Hamdoun                   DATE
    Liquidator,
    Lebanese Canadian Bank SAL


By: _____          6/20/13
    Evan T. Barr, Esq.                        DATE
    Steptoe & Johnson LLP
    1114 Avenue of the Americas
    New York, NY 10036
    (212) 506-3900
    *Counsel for Lebanese Canadian Bank SAL*


By: _____          _____
    John M. Hillebrecht, Esq.                 DATE
    DLA Piper
    1251 Avenue of the Americas
    New York, New York 10020-1104
    (212) 335-4590
    Counsel for Lebanese Canadian Bank SAL


[ADDITIONAL SIGNATURES ON FOLLOWING PAGE]

LEBANESE CANADIAN BANK, S.A.L.

By: _____        _____
George Zard Abou Jaoude                     DATE
Liquidator
Lebanese Canadian Bank SAL


By: _____        _____
Mohamad Ibrahim Hamdoun                     DATE
Liquidator,
Lebanese Canadian Bank SAL


By: _____        6/20/13
Evan T. Barr, Esq.                          DATE
Steptoe & Johnson LLP
1114 Avenue of the Americas
New York, NY 10036
(212) 506-3900
*Counsel for Lebanese Canadian Bank SAL*


By: _____        6/20/13
John M. Hillebrecht, Esq.                   DATE
DLA Piper
1251 Avenue of the Americas
New York, New York 10020-1104
(212) 335-4590
Counsel for Lebanese Canadian Bank SAL


[ADDITIONAL SIGNATURES ON FOLLOWING PAGE]


15

SOCIÉTÉ GÉNÉRALE DE BANQUE AU LIBAN S.A.L.

By: _____

Antoun Sehnaoui
Chairman and General Manager
Société Générale de Banque au Liban S.A.L.

06 - 20 - 13
DATE

By: _____

Gerard Garzuel
Chief Operating Officer
Société Générale de Banque au Liban S.A.L.

20 . 6 . 13
DATE

By: _____

Michael J. Sullivan, Esq.
The Ashcroft Law Firm
One Post Office Square, Suite 3750
Boston, MA 02109
(617) 573-9400
Counsel for SGBL

6-20-13
DATE

SO ORDERED:

Paul A. Engelmayer

THE HONORABLE PAUL A. ENGELMAYER
UNITED STATES DISTRICT JUDGE

6/25/13
DATE

16

### SCHEDULE A - List of LCB PRINCIPALS : February 2011 - June 18, 2013

| Names of Shareholders | Other Capacities | | | |
|---|---|---|---|---|
| | Board Members | Chairman & GM | GM | DGM |
| Leader Invest (Holding) SAL | ✔ | | | |
| Hamdoun Mohamad Ibrahim | ✔ | | ✔ | |
| Nevian LCB Ltd | ✔ | | | |
| Zard Abou Jaoude Georges Edward | ✔ | ✔ | | |
| Perpetual (Holding) SAL | ✔ | | | |
| Eurynome (Holding) SAL | | | | |
| Nasrallah Wadih Adel | | | | |
| Wan Invest SA | ✔ | | | |
| Nest Investments Holding Lebanon SAL | ✔ | | | |
| Trust International Insurance and Reinsurance Co. (Trust Re) * | | | | |
| Jordanian Expatriates Invest. Holding Co. | ✔ | | | |
| Qatar General Insurance and Reinsurance Company S.A.Q | ✔ | | | |
| Abu Nahl Ghazi Kamel Abdul Rahman | | | | |
| Abu Nahl Jamal Kamel Abdul Rahman | | | | |
| Compass  Insurance SAL | | | | |
| Trust International Insurance Company (Cyprus) Limited | | | | |
| Al Thani Nasser Ali Saoud Thani | | | | |
| Abu Nahl Fadi Ghazi | | | | |
| Abu Nahl Hamad Ghazi | | | | |
| Abu Nahl Kamel Ghazi | | | | |
| Zard Abou Jaoude Edward Jerjes | ✔ | | | |
| Diab Raymond Nasri | ✔ | | | |
| Makari Makarem Nabil | ✔ | | | |
| Abou Jaoude Carlos Antoine | | | | |
| Kapital (Holding) SAL | | | | |
| Gretta Ibrahim Ghafari | | | | ✔ |
| Ghassan Wadih Haikal | | | | ✔ |
| **Total** | **11** | **1** | **1** | **2** |

* In April 2012, the shareholder "Trust International Insurance and Reinsurance Company (Trust Re)" transferred all its shares (6,240,000 shares) to another shareholder of the group, namely Nest Investments Holding Lebanon SAL